UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JAMES P. ABRAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:25-cv-00285-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DAVID PAUL, WARDEN, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

*** *** *** ***

James P. Abrams is a convicted prisoner who is currently housed at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). Proceeding without counsel, Abrams filed a *Bivens* complaint against various officials at FMC Lexington. [R. 1.] Abrams also filed a motion for leave to proceed *in forma pauperis*. [R. 2.] Having reviewed Abrams's motion and supporting financial documentation, the Court is persuaded that he lacks sufficient resources to pay the $350.00 filing fee up front. Accordingly, his fee-related motion will be granted and he will be permitted to pay the filing fee in installments as outlined in 28 U.S.C. § 1915(b).

The Court must perform an initial review of Abrams's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. These provisions require dismissal of any claim that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Abrams names six defendants in his complaint: (1) David Paul, Warden; (2) J. Sizemore, Assistant Warden; (3) Dr. Melendez, Chief Medical Officer; (4) Ms. S. Mattingly, Healthcare Unit Manager; (5) Correctional Officer Vago; and (6) unidentified Swanson Security Agency employees. Construing Abrams's complaint liberally, he alleges that the defendants used excessive force against him and were deliberately indifferent to

his serious medical needs in violation of the Eighth Amendment to the United States Constitution. For relief, he seeks monetary damages and transfer to home confinement.

As an initial matter, Abrams's demand for transfer to home confinement will be denied. "When a court sentences a federal offender, the [Bureau of Prisons] has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' and the treatment programs (if any) in which he may participate." *Tapia v. United States*, 564 U.S. 319, 331 (2011) (citing 18 U.S.C. §§ 3621(b), (e), (f); 3624(f); 28 C.F.R. pt. 544 (2010)). Moreover, the BOP's placement decisions, including determinations regarding home confinement, are expressly insulated from judicial review, as the provisions of the Administrative Procedures Act ("APA") do not apply to such decisions. 18 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."). *Cf. Woodard v. Quintana*, No. 5:15-cv-307-KKC, 2015 WL 7185478, at *5-6 (E.D. Ky. Nov. 13, 2015).

Turning to Abrams's claims for money damages, constitutional claims against individual federal employees are brought pursuant to the doctrine of *Bivens*, which held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of his constitutional rights." *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 397 (1971). But while *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-677 (2009). *See also Ziglar v. Abbasi*, 582 U.S. 120, 140-41 (2017). Thus, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Indeed, "[e]ven a pro se prisoner must link his allegations to material facts . . . and indicate

what each defendant did to violate his rights . . . ." *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Abrams's claims against Warden Paul must be dismissed. Although Abrams alleges the existence of poor prison conditions, he does not allege any facts indicating that Paul was actively involved in establishing those conditions or that he had any involvement in the events leading to Abrams's alleged harm. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 676 (6th Cir. 2012) (observing that supervisory officials "are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it'") (quoting *Hayes v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982).

Abrams's claims against Dr. Melendez also must be dismissed. Abrams alleges that, on March 4, 2025, Melendez had him moved "off F4 Nursing Critical Care (NCC) . . . on the night before an official BOP & Department of Justice review . . . in retaliation for [Abrams] refusing to sign a waiver of liability about the repeated shackling." [R. 1-1 at 4]. Assuming Abrams's allegations are true, Abrams does not allege any facts indicating that he needed to remain in the critical care unit or that moving him to a different unit constituted deliberate indifference to a serious medical condition. *See Rhinehart v. Scutt*, 894 F.3d 721, 738-40 (6th Cir. 2018) (explaining that to be liable for deliberate indifference, "[t]he doctor must have 'consciously expos[ed] the patient to an excessive risk of serious harm'") (quoting *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018), *abrogated on other grounds by Brawner v. Scott Cnty.*, 14 F.4th 585, 591-97 (6th Cir. 2021)).

Finally, the Court will dismiss Abrams's claims against C.O. Vago. Abrams alleges that after he pressed the emergency button in the special housing unit ("SHU") on April 15, 2025, Vago told him: "If you press that button you better be on the ground [expletive] dying." [R. 1-1

3

at 5]. But Abrams does not allege any facts indicating that Vago was deliberately indifferent to a serious medical need when he made this statement. And verbal abuse, without more, does not constitute cruel and unusual punishment. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey v. Wilson*, 832 F.2d 950, 954-555 (6th Cir. 1987) (*per curiam*).

That being said, the Court will require Assistant Warden Sizemore and Unit Manager Mattingly to respond to Abrams's complaint. Since Abrams is a prisoner who is proceeding *in forma pauperis*, the Court will direct the Clerk's Office and the United States Marshals Service to serve these defendants with a summons and copy of the complaint on Abrams's behalf. *See* Fed. R. Civ. P. 4(c)(3) and 28 U.S.C. § 1915(d).

With respect to Abrams's claims against the unidentified Swanson Security Agency employees, Abrams must provide additional information before his claims against those persons can proceed. When a United States Marshal executes service of process, the plaintiff bears the initial responsibility of identifying the defendants with sufficient particularity for the Marshal to attempt service. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) (explaining the plaintiff must take reasonable steps "to identify for the court the defendants named in the complaint"); *Donaldson v. United States*, 35 F. App'x 184, 185 (6th Cir. 2002) ("[W]here a plaintiff is proceeding as a pauper, the district court bears the responsibility for issuing the plaintiff's process to a United States Marshal who must effect service upon the defendants *once the plaintiff has properly identified the defendants in the complaint*." (emphasis added)). Here, the

4

description of Swanson Security employees that Abrams includes in his complaint is too vague for a Marshal to effectuate service of process. Thus, Abrams does not satisfy his initial burden.

Abrams also is advised of Rule 4(m) of the Federal Rules of Civil Procedure, which provides, in part:

> **Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Consistent with Rule 4(m), Abrams is hereby notified that if he does not name the remaining defendants—*i.e.*, the "unidentified Swanson Security Agency employees"—within 90 days from the date he filed his complaint at R. 1, the Court will dismiss his claims against those defendants without prejudice. Should Abrams ascertain more specific information regarding the identity of the unnamed defendants, he should immediately advise the Court. *See also Drummond v. Warden of USP McCreary*, No. 6:22-cv-00059-REW, at DE 16 (E.D. Ky. Nov. 1, 2022) (taking the same approach in another case involving John Doe defendants); *Brown v. Federal Bureau of Prisons, et al.,* No. 6:22-cv-00097-DCR, at DE 6 (E.D. Ky. Aug. 8, 2022) (same).

Finally, Abrams filed motions asking the Court to take judicial notice of various Bureau of Prisons records and surveillance footage from FMC Lexington. [R. 4, 5.] However, the court may only take judicial notice of facts that are not subject to reasonable dispute, such as indisputable facts within public records. *See* Fed. R. Evid. 201(b); *Blackwell v. Nocerini*, 123 F.4th 479, 487-88 (6th Cir. 2024). There is no indication that these items are part of a public record and Abrams did not submit them for the Court's review. Regardless, Abrams has not explained how the contents of these items constitute "a factual issue . . . that, according to

5

information readily available in the public domain, cannot be reasonably disputed." *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 476 (6th Cir. 2008) (quoting *Denius v. Dunlap*, 330 F.3d 919, 927 (7th Cir. 2003)). Accordingly, his motions to take judicial notice will be denied.

Based on the foregoing, it is **ORDERED** as follows:

1. Abrams's motion for leave to proceed *in forma pauperis* [R. 2] is **GRANTED**. Payment of the $55.00 administrative fee is **WAIVED**.

2. Abrams must pay the $350.00 filing fee in the manner set forth below:

    a. The Court will not require payment of an initial partial filing fee at this time.

    b. The Clerk of the Court is directed to open an account in Abrams's name for receipt of the filing fee. The Clerk shall complete an E.D. Ky. 525 Notice of Payment Form with Abrams's name, his registration number, and this civil case number. The Clerk shall then send a copy of this Order and the Notice of Payment Form to the Warden of the institution where Abrams is currently confined.

    c. Abrams's custodian is directed to send the Clerk of the Court a payment each month from his inmate trust fund account. The payment should be in an amount equal to 20% of Abrams's income from the preceding month. However, the custodian shall only send a monthly payment if the amount in Abrams's account exceeds $10.00. The custodian shall continue the monthly payments until Abrams's entire $350.00 filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

3. Abrams's motions to take judicial notice [R. 4, 5] are **DENIED**.

4. Abrams's claims against Defendants David Paul, Dr. Melendez, and C.O. Vago and for transfer to home confinement are **DISMISSED** for failure to state a claim upon which relief can be granted. The Clerk is directed to **TERMINATE** Defendants Paul, Melendez, and Vago as parties to this action.

5. Abrams may **PROCEED** with his *Bivens* claims against Assistant Warden Sizemore and Ms. S. Mattingly.

6. A Deputy Clerk shall prepare four (4) "Service Packets" for service upon Defendants Sizemore and Mattingly. The Service Packets shall include:

    a. a completed summons form;

    b. the complaint and its attachments [R. 1 and attachments 1-6];

    c. this Order; and

    d. a completed USM Form 285.

7. A Deputy Clerk shall deliver the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket.

8. The USMS is directed to personally serve Assistant Warden Sizemore and Ms. S. Mattingly at the Federal Medical Center in Lexington, Kentucky through arrangement with the Federal Bureau of Prisons.

9. The USMS also shall serve the United States of America by sending one Service Packet by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky and another Service Packet by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.

10. The next step in the litigation is for Defendants Sizemore and Mattingly to answer or otherwise respond to Abrams's complaint in accordance with Rule 12 of the Federal Rules of Civil Procedure.

11. Finally, Abrams must immediately advise the Clerk's Office, in writing, of any change in his mailing address. If Abrams fails to do so, the Court will dismiss his case.

This 20th day of August, 2025.

Gregory F. Van Tatenhove
United States District Judge